**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AYE AYE KYI, | |
| Plaintiff, | No. 08-03383 JSW |
| v. | **ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| MICHAEL CHERTOFF, | |
| Defendant. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion for Summary Judgment filed by Defendant Michael Chertoff, Secretary of the Department of Homeland Security ("Defendant"), and the Cross-Motion for Summary Judgment filed by Plaintiff Aye Aye Kyi ("Plaintiff"). Having considered the parties' papers, relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY GRANTS Defendant's motion and DENIES Plaintiff's cross-motion.

## BACKGROUND

On July 14, 2008, Plaintiff filed a Petition for Review pursuant to 8 U.S.C. § 1421(c). In her Petition, Plaintiff asks the Court to review Defendant's decision to deny her application for naturalization. (Petition for Review ("Pet."), ¶ 1.) The facts giving rise to this dispute are as follows and, unless otherwise noted, are undisputed. On May 31, 1990, the Immigration and

1  Naturalization Service ("Service") approved an I-130 petition (the "original I-130 petition")
2  filed by Plaintiff's adoptive mother.[1] (Petition for Review ("Pet.") ¶ 7; Pet. Ex. 5.)

3  On July 17, 1995, Plaintiff filed an I-485 application to adjust her status to that of a
4  lawful permanent resident, on the basis of the original I-130 petition. (Pet. ¶ 7; Pet. Ex. 6.) On
5  June 19, 1996, the Service revoked the original I-130 petition on the basis that the adoption
6  deed was not valid. (Declaration of Melanie Proctor ("Proctor Decl."), Ex. A.) Plaintiff
7  appealed that decision. (Proctor Decl., Ex. B.) On July 31, 1996, the Service denied Plaintiff's
8  adjustment of status application. (*Id.*, Ex. C.) However, on August 28, 1996, the Service
9  reopened Plaintiff's adjustment of status application and held it in abeyance, pending resolution
10 of Plaintiff's appeal of its decision to revoke the original I-130 petition. (*Id.*, Ex. E.)

11 On August 10, 2001, the Service reopened the original I-130 petition, and it issued a
12 Notice of Intent to Deny, in which it advised Plaintiff that it again intended to revoke, on the
13 basis that the adoption deed was not valid. (*Id.*, Exs. F, G.) The Service subsequently revoked
14 the original I-130 petition. On March 4, 2002, Plaintiff, through counsel, appealed that
15 decision. (*Id.*, Ex. H.)

16 On or about February 14, 2003, while her appeal was pending, Plaintiff married Pius
17 Fong, a United States citizen. (Pet. ¶ 8; Pet. Ex. 7.) On April 11, 2003, Plaintiff sent a letter to
18 the Service, in which she informed the INS of her marriage. Plaintiff also submitted a second I-
19 130 petition and a second I-145 application, seeking to adjust her status to lawful permanent
20 resident on the basis of her marriage. (Pet. ¶ 9; Pet. Exs. 8-9.) Although Plaintiff advised the
21 Service of the pending appeal, she did not state that she wished to withdraw it.[2] (*See* Pet. Ex.
22 9.)

23 On or about August 8, 2003, the Service vacated its decision to deny the original I-130
24 petition. (Proctor Decl., Ex. I.) On or about that same date, Plaintiff was granted permanent

---

[1] On March 1, 2003, the INS was subsumed within the Department of Homeland Security, and the agency was divided into several subagencies, including the U.S. Citizenship and Immigration Services. For ease of reference, the Court refers, generally, to the predecessor and successor agencies as "the Service."

[2] The record does not indicate why Plaintiff did not withdraw the appeal of her original I-130 Petition.

2

residency in the United States based upon the status reflected in the original I-130 petition, namely the unmarried daughter of a lawful permanent resident. (Pet. 9, Pet. Ex. 1; Proctor Decl., Ex. I.) Notwithstanding that fact, the Memorandum and Creation of Record of Lawful Permanent Residence created by the Service reflects that Plaintiff was married. (Proctor Decl., Ex. I.)

On February 12, 2004, at an interview scheduled in connection with her second adjustment of status application, Plaintiff contends that she surrendered the permanent residency card she obtained based on the first adjustment of status application. (*See* Pet. ¶ 10; Proctor Decl., Ex. L.) On June 8, 2005, the Service approved Plaintiff's second I-130 petition, which her husband filed on her behalf. (*Id.*, Ex. J.) However, on June 20, 2005, the Service denied Plaintiff's second adjustment of status application, because, according to its records, she already was a permanent resident. (Pet. ¶ 11; Pet. Ex. 3; Proctor Decl., Ex. K.) On that same date, the Service returned Plaintiff's residency card to her. (Pet. Ex. 2.) The Service contends that, thereafter, Plaintiff took no efforts to abandon her permanent residency status.

On June 7, 2006, Plaintiff applied for naturalization. (Pet. ¶ 5.) The Service initially granted the application, but on December 14, 2006, reopened it. On January 29, 2008, the Service denied Plaintiff's application for naturalization on the basis that she had been granted lawful permanent residence status in error, because she had married and, therefore, was no longer eligible for adjustment of status as the unmarried daughter of a lawful permanent resident. (Pet. ¶ 12; Pet. Ex. 11; Proctor Decl., Ex. M.) Plaintiff appealed, and, on June 17, 2008, the Service affirmed its decision. (Pet. ¶ 13; Pet. Ex. 12.) On August 13, 2008, the Service initiated removal proceedings against Plaintiff, which remain pending. (Proctor Decl., Ex. N.)

## ANALYSIS

**A.   Applicable Legal Standards to Motions for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and

1  admissions on file, together with the affidavits, if any, show that there is no genuine issue as to
2  any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.
3  Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact
4  finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49
5  (1986). A fact is "material," if the fact may affect the outcome of the case. *Id*. at 248. "In
6  considering a motion for summary judgment, the court may not weigh the evidence or make
7  credibility determinations, and is required to draw all inferences in a light most favorable to the
8  non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

**B.     Defendant's Motion is Granted and Plaintiff's Motion is Denied.**

The facts above demonstrate that Plaintiff is in a procedural quagmire, and had the Service acted sooner, Plaintiff might not have been placed in a situation in which her ability to obtain citizenship has been delayed. However, for the reasons set forth herein, the Court concludes that the Service's decision to institute removal proceedings precludes the Court from granting Plaintiff relief. Thus, it is with reluctance, and frustration, that the Court grants Defendant's motion and denies Plaintiff's cross motion.

It is undisputed that, by virtue of her marriage, Plaintiff was no longer eligible for adjustment of status based on the grounds set forth in her original I-130 petition. Plaintiff argues that the Service should have considered her original I-130 petition void "by operation of law" and should have rescinded her permanent residency status, and that if it had done so, she could have been granted an adjustment of status based on the approval of the second I-130 petition. (*See* Proctor Decl., Ex. L.) Plaintiff further contends that, based on its refusal to take the appropriate actions and correct this error, the Service should be estopped from denying her naturalization application. Although it appears beyond dispute that the Service was aware that Plaintiff was married when it reversed its decision to revoke the original I-130 Petition, the Court concludes that its subsequent actions do not rise to the level of affirmative misconduct, which might enable the Court to apply the doctrine of equitable estoppel. *See, e.g., Socop-Gonazalez v. Immigration and Naturalization Serv.*, 272 F.3d 1176, 1184 (9th Cir. 2001 (noting

that Ninth Circuit has defined "affirmative misconduct" to mean "a 'deliberate lie' or 'a pattern of false promises'" and that negligence does not rise to the level of affirmative misconduct).

It also is undisputed that the Service has instituted removal proceedings. Pursuant to 8 U.S.C. § 1429, "no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act[.]" Although the Ninth Circuit has concluded that the institution of removal proceedings does not divest a district court of its jurisdiction to review a denial of an application for naturalization, it has stated that the scope of judicial review is limited to the basis for the denial. *See Bellajara v. Schiltgen*, 378 F.3d 1042, 1045-47 (9th Cir. 2004).

In the *Bellajara* case, the defendant denied the plaintiff's application for naturalization on the basis of pending removal proceedings, which distinguishes it from the facts of this case, but the Court still finds *Bellajara* to be dispositive. Under Section 1421(a), the Attorney General has the sole authority to naturalize aliens. *See* 8 U.S.C. § 1421(a). Thus, even if the Court were to conduct a *de novo* review of the Service's decision to deny Plaintiff's application, and even if the Court were to determine that the decision was in error, the Court could not grant Plaintiff effective relief, because it could not order the Attorney General to do something precluded by statute. *See Bellajara*, 378 F.3d at 1042 (rejecting the plaintiff's request to declare him eligible for naturalization because it would be purely advisory); *see also Aljani v. Chertoff*, 545 F.3d 229, 238-41 (2d Cir. 2008) (affirming district court's determination that pending removal proceedings precluded it from stating a claim for naturalization relief); *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004) (where removal proceedings were pending, "district court could not properly have ordered the Attorney General to grant [plaintiff's] application for naturalization").

Plaintiff argues that the reasoning of *Bellajara*, *Aljani*, and *Zayed* do not necessarily apply to her case, because she asks the Court simply adjust her status *nunc pro tunc*. Assuming *arguendo* that, as part of its *de novo* review, the Court could determine whether the Service erred in approving her original I-130 petition and in failing to rescind her status, the Court

5

concludes that it does not have the authority to issue an order directing the Service to adjust her status. *See, e.g., Hassan v. Chertoff*, 543 F.3d 564, 566 (9th Cir. 2008); *Gelfer v. Chertoff*, 2007 WL 902382 at *2 (N.D. Cal. Mar. 22, 2007) (concluding that court lacked jurisdiction to compel Service to approve application for adjustment of status).  Further, the issue of rescission of Plaintiff's status is now before the Immigration Judge, and if Plaintiff fails in that venue, she will be required to pursue relief before the BIA and the Ninth Circuit.

Finally, the Court has considered Plaintiff's request to hold this matter in abeyance pending resolution of the removal proceedings.  Having considered the authority provided by Plaintiff at the hearing, *In re Guang Li Fu*, 23 I. & N. 985, Interim Decision 3539 (BIA), 2006 WL 2579538 (Sept. 6, 2006), the Court concludes that awaiting the outcome of the removal proceedings to determine if a waiver is granted, would not alter the posture of this case.

## CONCLUSION

Accordingly, Defendant's motion is granted on the basis that the removal proceedings preclude this Court from granting Plaintiff relief, and Plaintiff's cross-motion is denied.  A separate judgment shall issue, and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: December 5, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE